CASE 35.—ACTION BY THE BREATHITT COAL, IRON & LUM-
BER CO. AGAINST JOHN R. BOWLING TO RE-
STRAIN HIM FROM TRESPASSING ON THEIR
LAND.—June 10, 1909.

# Bowling v. Breathitt Coal, Iron & Lumber Co.

Appeal from Knott Circuit Court.

D. W. GARDNER, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Affirmed.

1. Quieting Title—Party Entitled to Sue.—An action to quiet
   title cannot be maintained, unless the plaintiff is the owner
   and in possession of the land.

2. Injunction—Trespass to Real Estate—Actions—Statutes.—Un-
   der the express provisions of Ky. St. Sec. 2361, an action to
   restrain a tresspass may be maintained, though the owner
   is not in actual possession.

3. Injunction—Trespass to Real Estate—Title of Plaintiff.—
   Where plaintiff in a suit to restrain a trespass on land, show-
   ed that there were numerous prior grants within the exterior
   lines of the patent under which he claimed, and that none
   of the prior grants included the land in controversy, which
   was within the exterior lines of the patent, plaintiff was en-
   titled to recover.

4. Adverse Possession—Acts Constituting Adverse Possession.—
   One living on a tract of land to which he has title, and which
   is outside the claim of another, cannot obtain adverse pos-
   session of the land within the latter's elder patent, by mark-
   ing off a boundary and taking a deed from some one to it,
   without putting anything on the land to give the owner notice
   of an adverse claim; the owner being in the constructive
   possession.

JAMES GOBLE for appellant.

Bowling v. Breathitt Coal, Iron & Lumber Co.

Grounds relied on by appellant:

1. Appellee, alleging it is the owner of the tract, it claims and in the actual possession of it, must show both title and possession before it can recover.

2. It is not sufficient to show the land in dispute is inside the boundary claimed by plaintiff. It must show further that it is the owner of the 25,800 acres excluded, or that defendant is not or any part of the exclusion.

### AUTHORITIES CITED.

Harris v. Lavin, 6 Ky. L. R. 304; Hall v. Martin, 99 Ky. 9; Sims v. Sims, 88 Ky. 642; Moses v. Gatliff, 11 Ky. Law Rep. 356; Coppage v. Griffith, 19 Ky. Law Rep. 459; Gately v. Weldon, 12 Ky. Law Rep. 621; Cornelson v. Foushee, 101 Ky. 257; Whipple v. Earich, 93 Ky. 121; Cates v. Loftus &c., 4 T. B. Mun. 439; Boyce v. Blake &c., 2 Dana 127; Warrells on Ejectment, Sec. 228, 229; Shut v. Traverse, Sneed 307; Vaughn v. Mills, 18 B. M. 633; Green v. Wilson, 8 Ky. 601; Blue v. Sayne, 2 Dana 213; Turner v. Thomas, 13 Bush 518.

J. J. C. BACH and SMITH & COMBS for appellee.

### AUTHORITIES CITED.

Owsley v. Owsley, 25 R. 1186; Helton v. Strubbs, 22 R. 1919; Curtis v. Forman, 7 Ky. 514; Griffith v. Houston, 30 Ky. 390; Jones v. McCauley's Heirs, 63 Ky. 15; Degman v. Elliott, 9 R. 984; Manns v. Kavanaugh, 110 Ky. 776; Terry v. Johnson, 96 Ky. 95.

OPINION OF THE COURT BY JUDGE HOBSON —Affirming.

In the year 1872, a patent was issued to Steven G. Reed for a large body of land on the Laurel fork of Quicksand creek and its waters, there being excluded from the patent 25,800 acres of land previously granted. The Breathitt Coal, Iron & Lumber Company is, by subsequent conveyances, the owner of the land embraced in this patent. In April, 1887, Andrew Hix obtained a patent from the Commonwealth for 100 acres of land, and, soon after the patent was issued, he conveyed the land to John R. Bowling. This action was brought by the Breathitt Coal, Iron & Lum-

ber Company against Bowling on September 15th, 1905, to restrain him from trespassing upon their land; the boundary claimed by the plaintiff being set out in the petition. He answered, setting up his title to the 100 acres under the patent to Hix, and by adverse possession. On the final trial of the case the circuit court gave judgment in favor of the plaintiff, and Bowling appeals.

It is insisted that the plaintiff did not show an actual possession of the land, and therefore the judgment is wrong, as an action to quiet title cannot be maintained unless the plaintiff is the owner and in possession of the land. But this was not an action to quiet title. It was an action, under section 2361, Ky. St. to restrain trespasses upon it. The statute is in these words: "The owner of land may maintain the appropriate action to recover damages for any trespass or injury committed thereon or to prevent or restrain any trespasses or other injury thereto or thereon, notwithstanding such owner may not have the actual possession of the land at the time of the commission of the trespass." It was alleged that Bowling was trespassing upon the land, and the proof brought the case literally within the statute. The proof for the plaintiff showed that there were something over 500 prior grants, within the exterior lines of the Reed patent, and it is insisted for the defendant that the proof does not show that the land described in the plaintiff's petition is wholly without the prior grants. But the defendant only set up title to 100 acres. That 100 acres is the only thing in controversy in the action. The proof for the plaintiff satisfactorily shows that none of the prior grants included this 100 acres, and that it lies within the exterior lines of the Reed patent. In Chattaroi Timber & Cannel

Coal Co. v. Licking Coal & Lumber Company, (Ky.) 116 S. W. 682, there was no proof that the land in controversy was not within the prior grants. In Steele v. Bryant (Ky.) 116 S. W. 755, upon proof practically the same as that here, a recovery under a similar patent was sustained. It is also insisted for Bowling that he showed an adverse possession of the land for 15 years. He lived in 1887 upon a farm which he owned on Ball's fork of Quicksand creek, and while he was living there he obtained the deed from Hix for the 100-acres survey. He continued to live there until this suit was brought in 1905; and it is insisted for him that he was thus in adverse possession of the 100 acres for more than 15 years. The tract he lived on adjoined the 100 acres. There was something like one-fourth of a mile of timber between where he lived and the line of the 100 acres, but both tracts ran to the top of the ridge. His settlement was entirely outside of the plaintiff's patent. The land he lived on is not claimed by the plaintiff. He made no settlement on the 100 acres. He simply lived on his home place, claiming to be the owner of both tracts after he got the deed to the 100 acres. David Conley, about 25 years ago, made a settlement which included about an acre of the 100-acre tract, but he claimed adversely to Bowling. About the year 1902 he put his son, Jack Conley, in possession, and afterwards the plaintiff bought out Conley. This clearing which was made by Conley gave Bowling no rights, and we think it is clear from the evidence that Jack Conley entered under his father, and afterwards held as tenant of Bailey, under whom the plaintiff claims. So the question comes to this: Can a man who is living on a tract to which he has title, and which is outside of the plaintiff's claim, obtain ad-

verse possession of land within the plaintiff's older
patent simply by taking a deed to it and continuing
to live outside of the lap?

In Trimble v. Smith, 7 Ky. 257, the junior patentee
settled first on his patent, but not within the inter-
ference. It was held that by living on his patent in
this way he acquired no possession within the elder
patent. The court said: "Where there is no adverse
possession there can be no doubt that a man by an
entry into part of a tract may acquire the possession
of the whole, provided he may lawfully enter upon the
whole; but to construe an entry into part of which he
has right, to give him possession of another part to
which he has no right, would be making an act which
was right in itself tortious by construction." The
court then quotes from Coke on Littleton, and adds:
"Now, as the entry of the defendants in this case
upon the part of their tract not within the interfer-
ence, if construed to give them possession of the land
within the interference, would have the effect of di-
vesting the plaintiff of his right, it is clear that such
a construction is contrary to the law as laid down by
Coke. Indeed if such a construction should prevail, a
party having right might be divested of his right
without any wrong being in fact done to him, or any
possibility of knowing that any was intended to be
done." The question again came before the court in
Smith v. Mitchell, 8 Ky. 208. There the court said:
"The appellee is proven to have made an improve-
ment and actually settled upon the land contained
within his patent more than 20 years previous to the
bringing of this action; but, as neither the settlement
nor any part of his improvement was, at that date,
contained within the boundaries of the appellant's

grant, as was held by this court in the case of Trimble v. Smith, etc., 4 Bibb, 257, he cannot, from that improvement and settlement, be construed to have been possessed of the land claimed by the appellant.'' In Wilson v. Stivers, 34 Ky. 634, Stivers had lived upon the land for many years under a deed, but his settlement was outside of the plaintiff's grant. The court said: ''In this state of case it is well settled, by repeated adjudication, that the settlement and residence of Stivers and those under whom he claims, outside of the elder patent, did not give them possession of the interference.'' In Jones v. McCauley's Heirs, 63 Ky. 15, where the question again arose, the court said: ''A settlement under the elder patent, even outside of the lap, extended the constructive possession over the entire lap, unless there was then an actual possession of it under the junior grant, or unless the entry or occupancy under the elder patent was not intended to interfere with the lap, and so, also, occupancy under a junior grant may, constructively, extend the possession over an adjoining tract, owned and used by the occupant; but, to be allowed to have this effect there must be no adverse possession, either actual or constructive.''

The principles announced by these opinions were followed in Swafford v. Herd's Adm'r (Ky.) 65 S. W. 803, 23 R. 1556; Hendrickson v. Linville (Ky.) 104 S. W. 688, 31 R. 967; and Goff v. Low, (Ky.) 107 S. W. 794. A contrary rule was not laid down in Northup's Trustees v. Sumner's Trustees (Ky.) 116 S. W. 699. In that case the defendant had settled his sons within the lap, and had so held the possession for a great number of years. In Overton v. Perry (Ky.) 111 S. W. 369, the defendant had no legal title, and therefore

no constructive possession.  In Brown v. Wallace (Ky.) 116 S. W. 764, on facts similar to those here, the court said: "The only possession shown by appellant was purely constructive; that is, the evidence introduced in appellant's behalf conduced to prove that he owned a 175-acre tract of land adjoining the 70 acres conveyed to him by Lewis and Hardwick, and that from the time of his purchase of the 70-acre tract, which was some time prior to the year 1900, he treated it and the 175-acre tract upon which he lived as one and the same farm, and exercised acts of ownership over and claimed to be in the possession thereof in all respects as if it were a part of the 175-acre farm upon which he lived.  And, in addition, that his son-in-law in 1901, and while joint owner of the 70-acre tract, cleared and inclosed a part thereof, and erected thereon a house, in which he resided with his family, until he sold and conveyed appellant his interest in the land in 1903.  All this was doubtless true; but, at the same time the evidence without contradiction shows that neither appellant nor his son-in-law ever had actual possession of that part of the 70-acre tract included within the boundary of the Flynn patent, and that neither the building nor the clearing erected and made by the son-in-law was upon that part of the land covered by the Flynn patent.  Therefore appellant never had actual possession of the land in controversy, and it is not claimed that such possession was ever held by his vendors.  In order to defeat appellee's title and constructive possession under and by virtue of the elder or Flynn patent, it was necessary for appellant to prove actual, adverse, and continuous possession on the part of himself and vendors within the lap of the patents for

as much as 15 years before the institution of his action." If, in a case like this, a man could, while living on land which he admittedly owned, gain title within an elder patent which adjoined him, by simply marking off a boundary and taking a deed from some one to it, when there was nothing on the land to put the owner on notice of his adverse claim to it, there would be no security for land titles, and the entire doctrine that the settlement of the junior patentee, when without the lap, will give him no possession within the senior patent, would have to be abandoned. The plaintiff, having the title to the land was in the constructive possession of it. The defendant could not defeat this constructive possession by merely living on an adjoining tract of land not included in the plaintiff's patent, and claiming land within that patent.

On the whole record the judgment of the circuit court is in accord with the real right of the case.

Judgment affirmed.